## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Joanne C. Rietschel,

    Plaintiff,

v.

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

Civil No. 06-cv-3712 (DWF/JJG)

**REPORT
AND
RECOMMENDATION**

---

The above matter came before this Court on Plaintiff Joanne C. Rietschel's ("Rietschel") motion for summary judgment (Doc. No. 12) and on Defendant Commissioner of Social Security's ("Commissioner") cross-motion for remand (Doc. No. 16). The motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I.    BACKGROUND**

Rietschel is a 62 year-old woman who suffered a stroke on May 1, 2002. (AR 50, 81).[1] Although her prognosis after the stroke was quite good, including the hope that she could return to her prior job as an insurance claims adjuster (AR 164), it turned out that she experienced cognitive difficulties that interfered with her work. (AR 360-365). These difficulties included impairments in memory, speech, and processing time. (AR 166, 175, 181-182).

Neuropsychometric testing confirmed Rietschel's cognitive impairments due to her stroke, including

---

[1] The Court cites to the administrative record in this matter as "AR __".

problems with verbal fluency and numeric sequencing. (AR 157, 158). Her treating neuropsychologist described these impairments as "mild." *Id.*

Prior to the stroke, Rietschel worked for many years in the insurance industry. Her most recent position was as a technical claims examiner, a job which required her to analyze the more complex claims issues. (App. 358-360). After the stroke Rietschel took a six-month medical leave of absence from this position, returning to it in approximately November 2002. Upon her return, she tried performing the technical claims examiner job for a period of months, but was eventually demoted to a simpler claims examiner position. (AR 360). Although she could handle this job substantively, she could not do it fast enough. (AR 243, 360). Rietschel's employer expected her to complete ten adjustments per hour, but she could only do five or six. (AR 361).

Rietschel was, therefore, demoted again, this time to a customer service position, where she answered telephone calls regarding benefits or other questions. (AR 361). Rietschel encountered difficulties in this job too. It required her to take the caller's social security number, which she then entered into the computer. Rietschel consistently transposed the caller's number, particularly as the day wore on and she became fatigued. (AR 362). This was difficult for Rietschel, a college math major, and sufficiently prevalent that co-workers noticed and commented on it to her. (AR 262, 362). Rietschel also found herself transposing words. (AR 363). Rietschel performed the customer service job for approximately six months before she was laid off on February 2, 2004. (AR 365). Her boss told her that the company had done its "best," but that she did not know what else to do for her. (AR 366).

Because fatigue exacerbates her cognitive difficulties, Rietschel tried at one point to split her shift to allow for a resting period in the middle of the day, hoping this would improve her performance. (AR

357). This did not help. *Id.*

Since leaving the insurance company, Rietschel has worked very minimally as a substitute receptionist and as an innkeeper showing guests to their rooms at a bed and breakfast. (AR 352).

Rietschel's primary treating physician is Dr. Daniel Noonan, who she has seen for over ten years. (AR 216). Dr. Noonan's treatment notes and residual functional capacity questionnaires regarding Rietschel indicate that stress and fatigue exacerbate her cognitive dysfunction. (AR 216, 235, 244, 277, 279). Her treating neuropsychologist and speech therapist agreed. (AR 156, 166). These medical providers, therefore, ultimately recommended that she be limited to part-time, low stress work. (AR 156, 166, 244, 277).

Rietschel's medical records reflect treatment for a variety of other medical problems, the most enduring of which is a mild form of depression and anxiety. (AR 148). Rietschel has also been treated for carpal tunnel syndrome, had a pacemaker installed for atrial fibrillation, had upper eyelid and brow surgery for visual field loss, and underwent gastric bypass surgery. (AR 14).

Rietschel filed for Social Security disability insurance benefits on February 9, 2004. (AR 50). Her application was denied. (AR 27-31). She ultimately requested a hearing before an administrative law judge ("ALJ"), which occurred on May 5, 2006, in Minneapolis, Minnesota. (AR 12). On June 9, 2006, ALJ Roger W. Thomas denied her appeal. (AR 18). He determined at step four of the five-step disability evaluation process that Rietschel could perform her past relevant work as a customer service representative. (AR 17). Rietschel then filed a Request for Review, which the Social Security Appeals Council denied on August 30, 2006. (AR 5-7). Rietschel appealed to this Court on September 13, 2006.

## II.   ANALYSIS

In response to Rietschel's motion for summary judgment, the Commissioner filed a motion seeking remand of this matter back to the ALJ. The Commissioner conceded that the ALJ's decision that Rietschel could perform her last job as a customer service representative was not based on substantial evidence. *Defendant's Memo. in Support of Motion for Remand*, pp. 3-4. The Commissioner contends that remand is required to further develop the record regarding Rietschel's ability to perform past relevant work or other work in the economy. Rietschel requests reversal of the ALJ's decision along with an immediate finding of disability and an award of benefits. The Court must determine, therefore, whether remand is appropriate and, if so, the appropriate scope of such remand.

### A.   Standard of Review

The Commissioner's disability benefits decision will be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Johnson v. Apfel*, 210 F.3d 870, 874 (8th Cir. 2000). The Court must consider evidence that both supports and detracts from the decision. *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). Where the Commissioner improperly denies benefits, the ordinary course is to remand the case for further administrative proceedings "out of our abundant deference to the ALJ." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing *Cox v. Apfel*, 160 F.3d 1203, 1210 (8th Cir.1998)) (internal quotation omitted). The Court may, however, enter an immediate finding of disability where the record "overwhelmingly supports" such a finding. *Buckner*, 213 F.3d at 1011 (citations omitted).

### B.   Remand Is Required

The parties agree that the ALJ's decision that Rietschel could perform her past customer service

job was not supported by substantial evidence. The ALJ's residual functional capacity ("RFC") finding limited Rietschel to, inter alia, sedentary work with moderate levels of stress. (AR 16). The testifying vocational expert, however, did not explicitly consider the moderate stress level limitation in concluding that Rietschel could return to her customer service position. (AR 385). Rather, his testimony reflects that he considered only that the past work's sedentary classification matched Rietschel's sedentary RFC. *Id.* As the Commissioner acknowledges, the ALJ's step four conclusion based on the vocational expert's incomplete analysis was, therefore, faulty.

### 1. Stress Level Limitation

The Commissioner requests that the matter be remanded to allow the vocational expert to factor the moderate stress level limitation into his analysis. The Court agrees that remand is appropriate, but disagrees with the scope of the issues to be examined there. Although the ALJ concluded that Rietschel's RFC included a moderate stress level limitation, this decision was not supported by substantial evidence. Remanding to allow him to factor this insufficiently supported conclusion into the analysis would only result in further error.

Dr. Noonan, Rietschel's primary treating physician, concluded in his most recent report dated February 22, 2006, that Rietschel was capable of only a "low stress" job. (AR 277). Although this differed from his earlier October 29, 2004 assessment, in which he concluded that Rietschel could tolerate a job with "moderate stress," the record as a whole supports Dr. Noonan's most recent conclusion. As early as September 30, 2003, Dr. Noonan recommended limiting Rietschel to a four-hour shift to "decrease some of the job related stress which I feel is clearly exacerbating her situation." (AR 244). Rietschel's neuropsychologist and speech therapist also emphasized the debilitating effects of stress on Rietschel's

5

ability to perform her job. (AR 156, 166). The ALJ, however, erroneously failed to even acknowledge Dr. Noonan's low-stress limitation. *See* 20 C.F.R. § 404.1527(d)(2) (requiring ALJ to "always give good reasons" for the weight given to a treating source's opinion).

The testifying medical expert, Michael Lace, Psy.D., agreed with Dr. Noonan's low-stress limitation. Dr. Lace unequivocally opined that Rietschel would be restricted to "*[d]efinitely a low stress situation where there aren't any timed tasks ... or outputs that are measured.*" (AR 376) (emphasis added). The ALJ expressly credited Dr. Lace's testimony, including his opinion regarding the degree of stress under which Rietschel could work, but then incorrectly failed to incorporate the low-stress factor into Rietschel's RFC. (AR 16-17).

Although the testifying vocational expert failed to consider the impact of a moderate stress level limitation on Rietschel's ability to perform past work, he explicitly considered whether she could perform past work under a low-stress limitation. He concluded that she could not, testifying:

ALJ: Now, if I gave you a third hypothetical that the doctor gave today, our Medical Expert, that she were to have a low stress work where there's no timed tasks or outputs that required a certain amount of production.... Would that allow a person to do the past work or not?

VE: No, Your Honor.

ALJ: Okay. And your rationale for that would be?

VE: Well, working as a claims adjuster and even within the customer service field, it's a stressful occupation –

ALJ: Uh-huh.

VE:   – and –

ALJ:  Okay.

VE:   – it is contrary to a low stress job. I work with individuals in customer service and claims and it is anything but low stress.

(AR 385-386).

The Court, therefore, finds that substantial evidence in the record did not support the ALJ's RFC finding that Rietschel could tolerate moderate levels of stress. The ALJ wholly ignored Dr. Noonan's most recent opinion limiting her to a low-stress job. The ALJ credited medical expert Dr. Lace's opinion confirming the low stress limitation, but then inexplicably failed to incorporate it. Had the low-stress limitation been implemented, the vocational expert's testimony is abundantly clear that Rietschel is precluded from doing relevant past work as a customer service representative.

Remand for appropriate consideration of the low-stress limitation is, therefore, required. If the ALJ continues to conclude that Rietschel is limited to moderate stress work, he must appropriately set forth good reasons for failing to incorporate Dr. Noonan's 2006 opinion and the clear testimony of medical expert Dr. Lace, which he has already expressly adopted.

### 2. Part-Time Limitation

The Court also finds that the record lacks substantial evidence supporting the ALJ's rejection of Dr. Noonan's restriction that Rietschel work no more than four hours per day. (AR 17). The ALJ stated, "There is nothing in the medical reports to support Dr. Noonan's statements that the claimant cannot work more than four hours each day." *Id.* To the contrary, the record contains clear treating medical provider opinions supporting Rietschel's restriction to part-time work. In addition to Dr. Noonan's February 2006

opinion (AR 277, 279), he recommended in September 2003, that Rietschel's "shift be reduced to a four hour shift per day to decrease some of the job related stress which I feel is clearly exacerbating her situation." (AR 244). Rietschel's speech therapist at the Courage Center concluded on July 14, 2004, that "Due to her endurance issues and slowed processing speed a *part-time position* with little time restraints would be appropriate to allow her to work at her own pace." (AR 166). Moreover, the record is replete with medical provider conclusions and Rietschel's own complaints that fatigue, both mental and physical, negatively impacted her ability to work, all evidencing the need for part-time work. For example, Dr. Lace, the medical expert testified:

> Q: And complaints of cognitive slowing and as fatigue builds [sic], that's a common complaint that you would see in –
>
> A: Yes.
>
> Q: – a person with a stroke?
>
> A: Yes.
>
> Q: So it doesn't surprise you in this record that there's problems with endurance and problems with fatigueability especially after doing some work activity?
>
> A: No, not at all.

(AR 380). *See also* (AR 151, 166, 221, 243, 262, 277, 355-357).

Thus, on remand, the ALJ also needs to properly consider Rietschel's limitation to part-time work.

The Court is loathe to remand for additional step four analysis given the vocational expert's testimony that prior relevant work is precluded when the low-stress limitation is considered. The Court also notes the irony of conducting further proceedings regarding whether Rietschel can perform a job from

which she has already been fired for substandard performance. The standard of review, however, constrains the Court from simply substituting its judgment for that of the ALJ on the step four issue and necessitates remand to the ALJ for further consideration consistent with this Report and Recommendation. *See Stephens v. Shalala*, 46 F.3d 37, 39 (8th Cir. 1995).

### 3. **Lack of Overwhelming Evidence**

Rietschel urges the Court to forego remand and recommend an immediate finding of disability along with an award of benefits. Such a decision requires the support of "overwhelming evidence" of disability. *See Harmison v. Halter*, 169 F. Supp.2d 1066, 1072 (D. Minn. 2001). *See also Buckner*, 213 F.3d at 1011. Such evidence is lacking in the current record. Even assuming that the record presents overwhelming evidence that Rietschel is precluded from performing her past work when the appropriate restrictions are considered, the parties did not adequately examine the fifth step in the sequential disability analysis, whether Rietschel can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 4041560(c). The record, therefore, is incomplete on this point and falls short of the overwhelming evidence of disability necessary to avoid remand.

## III. CONCLUSION

The current record does not "overwhelmingly support" an immediate finding of disability. *See Buckner,* 213 F.3d at 1010-11. The Court, therefore, recommends that this matter be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendation. Specifically, the Court recommends that the ALJ appropriately consider the low-stress and part-time limitations recommended by Rietschel's medical providers in formulating her RFC and analyzing whether she can perform past relevant work or other work.

## IV.     RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

   A.   The Plaintiff's Motion for Summary Judgment (Doc. No. 12) be GRANTED in part to the extent it seeks remand of this matter for further proceedings consistent with this Report and Recommendation and DENIED in part to the extent it seeks reversal with an immediate award of benefits.

   B.   The Defendant's Motion for Remand (Doc. No. 16) be GRANTED in part to the extent it seeks remand of this matter for further proceedings consistent with this Report and Recommendation and DENIED in part to the extent it seeks consideration on remand of matters inconsistent with this Report and Recommendation.

   C.   The matter be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

Dated this 1st day of October 2007.            s/ Jeanne J. Graham

_____
JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **October 19, 1997**.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.